# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| BRAD H.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>    Defendant. | No. ED CV 17-02296-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Brad H. ("Plaintiff") appeals the Commissioner's final decision denying his application for Supplemental Security Income ("SSI"). The Commissioner's decision is affirmed and this matter is dismissed with prejudice.

## I. BACKGROUND

On November 21, 2013, Plaintiff filed an application for SSI, alleging disability beginning March 25, 2001. See Dkt. 16, Administrative Record

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

("AR") 67, 95, 161-66. After his application was denied initially and on reconsideration, Plaintiff timely requested and received a hearing before an Administrative Law Judge ("ALJ") on April 14, 2016. See AR 24-46, 67, 95, 111-12. At the hearing, Plaintiff amended his onset date to the filing date, and the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See AR 24-46. On June 7, 2016, the ALJ issued an unfavorable decision. See AR 9-19.[2]

In her decision, the ALJ determined that Plaintiff had severe impairments of status post open reduction internal fixation (ORIF) right femur and left ulna and radius; status post fracture of the right femoral head and removal of hardware; hypertension; status post right anterior cruciate ligament (ACL) surgery and osteoarthritis of the right knee; and degenerative joint disease of the L4-5 vertebra. See AR 15. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) except that he could frequently reach, handle, finger, and feel; could occasionally climb ramps and stairs, balance, and stoop; could not crouch, kneel, crawl, climb ladders, ropes, or stairs, or work at unprotected heights or around hazardous machinery; and needed to avoid concentrated

---

[2] The ALJ's decision also discussed Plaintiff's application for Social Security Disability Insurance Benefits ("DIB"). See AR 12-13. The ALJ noted that Plaintiff's last insured date was in 2005 and that Plaintiff was no longer eligible for DIB. See id. A prior application alleging the same onset date was denied in 2009. See id. Because res judicata principles applied to the prior decision denying DIB, and because there was no basis to reopen Plaintiff's claim, the ALJ dismissed Plaintiff's request for a hearing to appeal his denial of DIB. See id.

Plaintiff does not contest the ALJ's findings regarding his DIB application. Accordingly, the Court does not address the dismissal of Plaintiff's DIB application in its analysis.

exposure to extreme heat and extreme cold.³ See AR 16. Based on the VE's testimony, the ALJ found that Plaintiff could perform jobs that exist in the national economy, such as patient transporter, hand packager, and hospital cleaner. See AR 18. Accordingly, the ALJ determined that Plaintiff was not disabled. See AR 19.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ erred in: (1) assessing the medical evidence to determine Plaintiff's RFC, (2) assessing Plaintiff's subjective symptom testimony, and (3) finding that Plaintiff could perform other jobs that exist in the national economy. See Dkt. 23, Joint Stipulation ("JS") at 4.

### A. RFC

Plaintiff contends that the RFC is "internally inconsistent" because it provides that Plaintiff is "capable of standing all day, and lifting up to 50 pounds up to one-third of the work day," but also precludes Plaintiff from crouching, kneeling or crawling, and limits him to only occasionally climbing ramps and stairs, balancing, and stooping.⁴ Id. at 5. Plaintiff further alleges that the RFC is "unsupported by the evidence of record." Id. at 6.

---

³ According to 20 C.F.R. § 416.967(c), "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

⁴ Plaintiff also asserts that "the multiple non-exertional and postural limitations set forth by the ALJ would eliminate virtually the entire medium work base." JS at 6. That the limitations assessed by the ALJ may eliminate a significant number of jobs at the medium exertional range is irrelevant. As explained infra in Section II.C, the ALJ properly found at step five of the

3

A claimant's RFC is the most a claimant can still do despite his limitations. See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.545(a)); see also 20 C.F.R. § 416.945(a). An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. See 20 C.F.R. § 416.945(a)(2). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. See 20 C.F.R. § 416.927(d)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. See 20 C.F.R. § 416.945. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff's claim that the RFC is internally inconsistent lacks merit. Contrary to Plaintiff's contention, the ALJ did not find that Plaintiff was "capable of standing all day." JS at 5. The "full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday," while "sitting may occur intermittently during the remaining time." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6. While courts have found error where an RFC is contradictory on its face, see, e.g., Denison v. Berryhill, No. 16-6047, 2017 WL 3592454, at *2 n.2 (W.D. Wash. Aug. 21, 2017) (finding RFC internally consistent because it provided both that claimant could "never" climb ladders or crawl and that he could "occasionally" climb ladders and crawl); Baez v. Colvin, No. 16-00539, 2016

---

analysis that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy.

WL 5662072, at *5 (W.D. Wash. Oct. 3, 2016) (finding RFC internally inconsistent where ALJ limited claimant to "tasks that would not require communication in English" but also found that he could "interact with supervisors and take instructions and direction"), here Plaintiff identifies no facial inconsistencies and fails to explain how the lifting or standing/walking requirements of medium work conflict with his postural limitations.[5]

Substantial evidence supports the ALJ's RFC finding. Plaintiff's physical impairments arise out of motorcycle accidents in 1991 and in 2001. See AR 287. In 1991, Plaintiff fractured his upper left forearm, ulna, and radius and subsequently underwent an open reduction and internal fixation. See id. In 2001, Plaintiff fractured his right femur and right distal radius and underwent surgical procedures for both fractures. See AR 274-76. Plaintiff's medical records from 2001 to 2003 show that Plaintiff underwent subsequent treatment, including further surgeries, for his right thigh and knee. See AR 227-33, 235-59, 261-65, 270-73. While Plaintiff's limited medical records from 2014-2016 reveal evidence of his earlier injuries, they do not support significant limitations with regard to the relevant period.

Radiology reports were mild, reflecting evidence of prior surgery but "no evidence of a current injury" in Plaintiff's left forearm, AR 314, a "well preserved hip joint," AR 295, and mild osteoarthritis of the lower lumbar spine with degenerative disc disease of L4-L5 but no evidence of spondylolysis or

---

[5] The Court observes that the RFC limits Plaintiff to occasionally climbing stairs but also precludes him from climbing "ladders, ropes, or stairs." AR 16. At the hearing, the ALJ's four hypotheticals to the VE all allowed occasional climbing of stairs but precluded climbing "ladders, ropes and scaffolds." AR 44-46. Therefore, the Court concludes that this was a typographical error and was harmless because it ultimately did not affect the VE's testimony, on which the ALJ relied at step five of her analysis. See AR 18-19.

spondylolisthesis, see AR 312. A 2014 x-ray of the right knee showed a "well preserved knee joint with patella alta" and evidence of a retained metallic screw, but no other abnormalities. AR 295. A 2015 x-ray of the right knee revealed similar findings, including evidence of a previous fracture and a component of a screw retained in the body, but "no evidence of a [current] fracture or osseous injury," soft tissues within normal limits, and "minimal osteoarthritis." AR 313. In a consultative examination from March 12, 2014, Dr. Bryan To found that Plaintiff had normal muscle tone and mass, normal and symmetric deep tendon reflexes, normal motor function and strength, grossly intact sensation, and negative straight leg-raising tests bilaterally with lumbar range of motion within normal limits. See AR 289-90. Although Dr. To noted residual pain and a surgical scar in the left forearm, reduced range of motion of the right knee with pain, a right knee deformity with calcification, and a limp due to right knee and leg pain, he found no evidence of swelling or of infection in the knee joint. See id. At an urgent care visit on February 11, 2015, physician assistant Michael Jasso found that Plaintiff walked with a limp in the right knee but had normal strength and tone in all extremities, including his right leg, and had only mild and localized tenderness to palpation in his right thigh and knee, with decreased range of motion and no effusion. See AR 297-99. Treatment notes from Dr. Craig Mueller reflect negative straight leg raising tests and back and right knee pain which was treated effectively with medication. See AR 300, 304-05, 308-10, 316.

In formulating the RFC, the ALJ gave great weight to Dr. To's opinion and those of state agency physicians Dr. Rose and Dr. Bates. See AR 17. All three doctors opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and could sit and stand/walk for 6 hours each in an 8-hour workday. See AR 62, 88-89, 290-91. Dr. To opined that Plaintiff could occasionally push and pull 50 pounds; could frequently push and pull 25

pounds; bend, kneel, stoop, crawl, crouch, walk on uneven terrain, climb ladders, and work with heights; and could not work with heavy moving machinery. See AR 290-91. Dr. Rose found that Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could occasionally climb ladders, ropes, and scaffolds; and needed to avoid concentrated exposure to vibration or to hazards such as machinery and heights. See AR 89-90. Dr. Bates assessed no postural, manipulative, or environmental limitations. See AR 62. The ALJ's determination that Plaintiff could perform medium work with significant postural limitations incorporated substantially all of the limitations provided by these physicians, and in some cases offered more extensive restrictions (for instance, the ALJ precluded Plaintiff from crouching, kneeling, and crawling). See AR 16. Plaintiff does not contend that the ALJ improperly weighed any of these opinions. Nor does the record contain opinions from any other physicians as to Plaintiff's functional limitations.

Because the ALJ properly assessed the medical evidence in formulating the RFC, remand is not warranted on this ground.

**B.     Subjective Symptom Testimony**

In a function report from December 2013, Plaintiff complained of constant pain in his right leg, which "gives out," and stated that his left arm "gets stiff." AR 187. In updated reports from June and August 2014, Plaintiff stated that his leg pain had worsened, that he had become less active and was unable to drive, and that he could not walk on some days due to the pain and his leg giving out. See AR 193, 195, 200, 203. At the hearing, Plaintiff testified that his right leg "basically . . . gives out" and "swells up" and that he could not get out of bed some days because of the swelling. AR 29. Plaintiff testified that he had bending and walking limitations, and that every couple of months he would "just fall down for no reason" because of his right leg giving out. AR

40. Plaintiff also stated that his leg hurt after sitting for more than a couple of hours and that he required assistance with transportation. See AR 40-41.

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and the record. See AR 17. Despite records of Plaintiff's treatment in the period immediately following his 2001 motorcycle accident, there was "little evidence to support [Plaintiff's] allegations of debilitation and ongoing residual pain symptoms." Id. The ALJ determined that the objective findings, including x-rays showing only mild osteoarthritis, did not support more restrictive limitations. See id. The ALJ also noted that Plaintiff's treatment was "sporadic at best" and that he "reported good response to his medications."[6] Id.

The court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. See id. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's]

---

[6] The Commissioner contends that inconsistencies between the medical record and Plaintiff's statement that he used a wheelchair after his 2001 accident provided an additional reason for the ALJ to discount Plaintiff's symptom testimony. See JS at 17-18. Because the ALJ did not actually articulate this reason in discounting Plaintiff's testimony, the Court does not consider it. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies in his testimony, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen, 80 F.3d at 1284 n.8. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ offered several clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. As explained above, the medical evidence revealed only mild findings. See Section II.A supra. Although objective medical evidence cannot be the only basis for discrediting a claimant's subjective symptom testimony, the ALJ permissibly relied on this evidence as one reason to discount Plaintiff's allegations. See AR 17; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2009) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Next, the ALJ permissibly found that Plaintiff's limited treatment during the relevant period was inconsistent with his allegations of debilitating pain. See AR 17; Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (citation omitted). At the hearing, Plaintiff testified that he did not have treatment between 2003 and 2014 because he lacked insurance and had "finally" gotten Medi-Cal in 2013 or 2014. AR 32. Plaintiff did not correct the ALJ when she stated that he began receiving Medi-Cal in 2013. See AR 32-33. An ALJ may not draw any inferences from a claimant's failure to seek treatment without considering any

explanation, and inability to afford treatment or lack of insurance is a valid reason for not seeking greater treatment. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008); Trevizo, 871 F.3d at 680-81. But even assuming Plaintiff obtained insurance as late as 2014, the record contains only sparse treatment notes from 2015 and 2016, consisting of one urgent care visit and four primary care appointments in which Dr. Mueller prescribed pain medication and ordered x-rays. See AR 297-318.

Finally, the ALJ properly weighed the effectiveness of Plaintiff's pain medication against his credibility. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling . . . ."). Dr. Mueller's treatment notes consistently indicated that Plaintiff's right leg and back pain were relieved by prescription medication. See AR 300, 304, 308. On December 29, 2015, Dr. Mueller indicated that the severity level of Plaintiff's leg pain with medication was zero. See AR 300. At his urgent care visit, Plaintiff told Jasso that opioid analgesics relieved his pain. See AR 297. This positive response to pain medication supports the ALJ's decision to view Plaintiff's symptom testimony as less than fully credible. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that a positive response to physical therapy and anti-inflammatory medication "undermine[d] [claimant's] reports regarding the disabling nature of his pain").

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. The ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective complaints about the severity of his physical impairments. Thus, remand is not warranted on this ground.

## C. Step Five Determination

At step five of the sequential evaluation process, the ALJ considers the claimant's background and RFC to decide if the claimant can make an adjustment to some other available job. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). The ALJ may rely on an impartial VE to provide testimony about jobs the applicant can perform despite her limitations. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). The Dictionary of Occupational Titles ("DOT") guides the analysis. See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If the VE's opinion that the claimant is able to work conflicts with the requirements listed in the DOT, then the ALJ must ask the VE to reconcile the conflict before relying on the VE to decide if the claimant is disabled. See id. (citing SSR 00-4P, 2000 WL 1898704, at *2).

At the hearing, the VE opined that a hypothetical individual with Plaintiff's limitations could work as a hand packager, DOT 920.587-018, 1991 WL 687916; hospital cleaner, DOT 323.687-010, 1991 WL 672782; or patient transporter, DOT 355.677-014, 1991 WL 672947. See AR 44. In her written decision, the ALJ relied on the VE's testimony to find that Plaintiff could perform jobs that existed in significant numbers in the national economy and was therefore not disabled. See AR 18-19.

Plaintiff argues that the ALJ erred in her step five determination because she failed to resolve conflicts between the VE's testimony and the DOT. Plaintiff argues that the ALJ's finding that he was limited to frequent manipulative activities is inconsistent with the DOT definition of hand packager, which requires constant reaching, handling, and fingering. See JS at 21. Plaintiff also argues that his RFC precluding crouching and limiting him to occasional stooping is inconsistent with the DOT definition of hospital cleaner, which requires occasional crouching and frequent stooping. See id. The Commissioner concedes that the ALJ erred in finding Plaintiff capable of

performing these occupations but maintains that the ALJ's error was harmless because the third occupation of patient transporter was consistent with Plaintiff's RFC and existed in significant numbers in the national economy. See JS at 22-23. Plaintiff contends that the occupation of patient transporter exceeds his RFC "precluding and/or limiting [Plaintiff] to no more than occasional postural and non-exertional" activities because it "clearly requires the individual to have the ability to push patients around a medical facility in a wheelchair all day long."[7] JS at 21-22.

    Plaintiff's assertions about the job of patient transporter are incorrect. According to the DOT, this job requires only occasional stooping, reaching, handling, and fingering, and does not implicate any of Plaintiff's other postural, manipulative, or environmental limitations. See DOT 355.677-014, 1991 WL 672947. Although the DOT indicates that the job may involve transporting patients in wheelchairs, nothing in the DOT suggests that this activity must be performed "all day long." See id. Because Plaintiff fails to establish any conflict between the DOT and the VE's testimony regarding the job of patient transporter, the Court's analysis turns to whether this occupation existed in significant numbers in the national economy.

    An individual is not disabled if she can engage in work that exists in the national economy. The Commissioner must demonstrate that such jobs exist "in significant numbers either in the region where such individual lives or in

---

[7] In support of his argument, Plaintiff cites the patient transporter job description located at http://www.skilltran.com. See JS at 21-22. Rather than considering this website, the Court looks directly to the DOT. See 20 C.F.R. § 416.966(d) (holding that the DOT is a source of "reliable job information"); SSR 00-4P, 2000 WL 1898704, at *2 (noting that the Social Security Administration "rel[ies] primarily on the DOT . . . for information about the requirements of work in the national economy" at step five of the sequential analysis).

several regions of the country." 42 U.S.C. § 1382c(a)(3)(B); see Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523-25 (9th Cir. 2014). "The burden of establishing that there exists other work in significant numbers"—either nationally or regionally—"lies with the Commissioner." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). If a reviewing court finds the number of jobs at either the regional or national level significant, the ALJ's decision must be upheld. See id. at 390. An ALJ may properly rely on a VE's "testimony regarding the number of relevant jobs in the national economy," as agency regulations allow an ALJ to "take administrative notice of any reliable job information." Bayliss, 427 F.3d at 1218.

At the hearing, the VE testified that there were 35,600 patient transporter jobs nationwide. See AR 44. In Gutierrez, the Ninth Circuit held that 25,000 jobs nationally constituted a significant number of jobs in the national economy. See 740 F.3d at 528-29. Therefore, the occupation of patient transporter existed in significant numbers in the national economy. Because this occupation independently satisfied the Commissioner's burden at step five, the ALJ's error in failing to resolve conflicts about the two other representative jobs was harmless. See Stout v. Comm'r., Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an ALJ's error that is "inconsequential to the ultimate nondisability determination" is harmless); Mitchell v. Colvin, 584 F. App'x 309, 312 (9th Cir. 2014) (finding ALJ's error in finding claimant capable of two representative jobs harmless because third job existed in significant numbers).

///
///
///
///

## III. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is affirmed and this action is dismissed with prejudice.

Date: April 25, 2019

/s/ Douglas F. McCormick
DOUGLAS F. McCORMICK
United States Magistrate Judge